# GASSENHEIMER *v.* DISTRICT OF COLUMBIA.*

POLICE REGULATIONS; AUTOMOBILES.

1. Automobiles used for hire, for which the owner has public hack licenses, are vehicles within the meaning of section 7, article 10, of the police regulations, which provides that vehicles for hire, seeking employment, shall not loiter on the streets, except at the regular public stands.

2. A conviction under section 7, article 10, of the police regulations, providing that vehicles for hire, seeking employment, shall not loiter on the streets, except at the regular public stands, is warranted, where it appears that the defendant's vehicles stood in front of a hotel of which he was not the proprietor, at a place not a public stand, displaying placards indicating that they were for hire by the general public, and that in two instances they were hired to persons not guests of the hotel; and it is immaterial that the defendant maintained an agent in the hotel to make contracts with guests, and to telephone for vehicles for their use. (Distinguishing *Willard Hotel Co.* v. *District of Columbia*, 23 App. D. C. 272; *Gassenheimer* v. *District of Columbia*, 25 App. D. C. 179.)

3. Where an owner and licensee of public vehicles permits them to stand in the street, it cannot be said that the evidence is insufficient in law to warrant a finding that he knew of, profited by, and encouraged a violation of a law prohibiting such use of the streets. (Following *Trometer* v. *District of Columbia*, 24 App. D. C. 242, 248.)

No. 1610.   Submitted January 4, 1906.   Decided January 17, 1906.

*Automobiles.*—The decisions dealing with the various questions relating to automobiles which have been passed upon by the courts are presented in an editorial note to *Christ* v. *Elliott*, 1 L.R.A. (N.S.) 215.

IN ERROR to the Police Court of the District of Columbia.
*Affirmed.*

The COURT in the opinion stated the facts as follows:

An information in the police court charged that Samuel Gassenheimer, on August 24, 1905, in the District of Columbia, on Pennsylvania avenue northwest, being the owner of a certain licensed hack, did then and there, and on divers other dates since the date aforesaid, cause the same to occupy a stand, while unemployed, other than one designated by the commissioners of the District as a public hack stand. He was adjudged guilty, and has been granted a writ of error to review the judgment.

The regulation which he was charged with violating is found in section 7 of article 10, and reads as follows:

"Sec. 7. Vehicles for hire, seeking employment, shall not stop or loiter upon any street, except at the regular public stands; nor shall the driver of any such vehicle solicit passengers upon the streets, avenues, or public grounds," etc.

The evidence on behalf of the prosecution tended to show that, on August 24, 1905, defendant Gassenheimer was the owner of a number of automobiles engaged in carrying passengers for hire. That on said date as many as four of said automobiles were seen standing in the street in front of the Columbia hotel, at 1413 Pennsylvania avenue N. W., which is not a public stand. That said automobiles displayed placards with the words "automobiles to hire" thereon. That on said day, while but one automobile was in front of said hotel, a member of the police force and one Saunders approached the driver. That Saunders asked the driver if the automobile was engaged, to which he replied "No." That they told the driver they wanted to drive around town, got in and were driven for one hour, and paid the driver $3 for the carriage. That on another occasion four automobiles belonging to the defendant had been seen standing in front of said hotel for ten or fifteen minutes. That one of the drivers was asked if he was engaged and his answer was, "Do you want to take a ride?" That the policeman, who

was not in uniform, and another person entered the vehicle and were driven down said avenue to Twenty-fifth street, paying 75 cents to the driver therefor. Other evidence tended to show that persons passing on the street had been seen to enter defendant's vehicles at the same point, and take rides in them. That some of these may have come out of the hotel, but the majority did not.

Defendant, on his own behalf, testified that he rents and maintains an office in said hotel, and has automobiles in front thereof for hire to guests. That he does not run his automobiles himself, but has men hired for the purpose. That automobiles are sent to the hotel upon telephone calls for the same. That he sends them to the hotel just as automobiles and carriages are sent to the Raleigh and other hotels. On cross-examination, he said that he owned the automobiles and had public hack licenses for the same, but did not own the hotel and was not interested in the business.

*Mr. M. F. Mangan* and *Mr. Frank J. Hogan* for the plaintiff in error.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. James Francis Smith,* Assistant, for the defendant in error.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. There can be no doubt that automobiles used for hire, and for which their owners have public hack licenses, are vehicles within the meaning of section 7 of the regulations aforesaid. Moreover, section 1 of article 4, which designates the public hack stands, provides that every licensed vehicle for the conveyance of passengers shall be considered a hack within the meaning and intent of the regulations. The information, therefore, correctly described the vehicle as a public hack.

2. The contention of the plaintiff in error that the facts in evidence bring the case within the principle of the recent cases

of *Gassenheimer* v. *District of Columbia,* 25 App. D. C. 179, and *Willard Hotel Co.* v. *District of Columbia,* 23 App. D. C. 272, is untenable.

The complaint in the first of those cases was for obstructing the public streets, in violation of another regulation. The defendant owned the hotel before which the vehicle stood, and, while there was evidence tending to show that it was kept there for hire to the public, it had no relevancy to the offense charged. As was said by Mr. Justice Duell, who delivered the opinion of the court: "There is absolutely no affirmative testimony whatever to show that traffic was delayed or hindered to the slightest degree by reason thereof. The information was not based upon the allegation that a public cab stand was maintained in an unauthorized place. * * * We do not now pass upon the right of a stableman to keep his vehicle standing in the street in front of his office ready for hire."

In the *Willard Hotel Case* the prosecution was under section 7, but the facts were essentially different. It was shown that the hotel company had hacks under lease from a licensed stable keeper, which stood in the street in front of the hotel; but these were kept exclusively for the use of guests of the hotel. It was further shown that the driver of one of these hacks, when asked what he was doing there, said he knew it was not a public stand, but that he was there subject to call for the carriage of guests of the hotel only. It was further shown that all engagements were made in the hotel office; that none but guests were supplied; and that the charges were never fixed or collected by the drivers, but were entered against the guests using them, and collected with their other charges.

It was held that, under the lease, the hacks were, for the time being, the property of the hotel company, and that it had the right to keep them in front of its premises for such use, provided that in so doing it did not violate the regulation against obstructing a public street. After stating this conclusion, Mr. Justice Morris, who delivered the opinion of the court, took occasion to say: "A very different question might be presented if the hotel company, instead of restricting the use of its vehicles to the

guests of the hotel, stationed them upon the street for hire to any and all persons who might desire to use them. Then there would undoubtedly be the maintenance of a public cab stand in an unauthorized place and an unwarranted use of the public highway for purposes forbidden by the municipal ordinances. But no such question is presented here, for the testimony is to the effect that the hotel company rigidly restricts the use of its vehicles to the guests of the house."

In the case at bar the uncontradicted evidence showed that the vehicles stood in front of the hotel, at a place not a public stand, displaying placards indicating that they were for hire by the general public. In the two instances of use they were hired to persons not guests of the abutting hotel, and the drivers fixed and collected the fares.

This made a prima facie case sufficient to warrant the conviction of the offense charged.

The defendant admitted that he was not the proprietor of the hotel and had no interest in its business.

The vehicles were not under lease to the hotel proprietor, who, in that event, might have been responsible for their hiring to persons not his guests, if informed of the practice. The mere fact that the defendant may have had an agent in the hotel authorized to make contracts with guests and to telephone for vehicles for their use is not necessarily inconsistent with the fact that other vehicles may have been sent for and kept at the same place for hire to the general public.

Going no farther than stated, this evidence does not make it necessary to determine the question, whether an owner of licensed vehicles, who, in good faith and by arrangement with the proprietor, maintains an office or agency in a hotel for the purpose of furnishing vehicles to its guests, has the same right as the proprietor to keep a reasonable number of vehicles in the adjacent street, subject to call for that purpose exclusively.

Assuming these rights to be identical, though there may be an essential distinction, yet, in either case, it must appear that the arrangement has been made in good faith for the use of guests of the hotel, and is not a pretext for the maintenance of a stand

to secure the patronage of the general public, as well, in violation of the regulation.

Nor is it necessary to rest the conviction upon the legal responsibility, merely, of the defendant for the acts of his agents, under the principle enunciated in *Lehman* v. *District of Columbia,* 19 App. D. C. 217, 234, which was a prosecution under the law regulating sales of liquors, opening of saloons, etc.

The offense charged was not the solicitation of passengers by the defendant's drivers, or their carriage of other than hotel guests for hire. These acts were among the circumstances from which the unlawful intent of the defendant in sending his automobiles to stand in the street in front of the hotel might be inferred.

As owner and licensee, he permitted the vehicles to stand in the street; and we cannot say that the evidence was insufficient in law to warrant the court in finding that he knew of, profited by, and encouraged the violation of the law. *Trometer* v. *District of Columbia,* 24 App. D. C. 242, 248. That the drivers may also have been amenable cannot have the effect to relieve him of his criminal responsibility.

3. It is further contended that the regulation imposes no duty upon any person other than the drivers of vehicles; and that only in respect of soliciting passengers when stopping or loitering upon the streets. The regulation might have been more aptly worded in order to accomplish its purpose, but we think it sufficient. By a separate section the violation of any one of the regulations is made punishable, and, while the stoppage or loitering of the vehicle is prohibited by the regulation, the act is necessarily that of its owner, or driver, or both.

Finding no error in the proceedings in the Police Court, the judgment will be affirmed. It is so ordered.      *Affirmed.*